## SULLIVAN *v*. STATE.

Opinion delivered June 3, 1899.

1. CONFESSION—FLATTERY OF HOPE.—A confession by one accused of larceny is inadmissible if it is induced by the promise of the owner of the stolen property that if accused would confess he would make it easy with him. (Page 508.)

2. INSTRUCTION—INVASION OF JURY'S PROVINCE.—An instruction, in a prosecution for the larceny of some meat, "that the confession made by the defendant to Col. B. A. Johnson, together with the fact that the meat was stolen, will justify you in finding the defendant guilty," is erroneous in that it invades the province of the jury in assuming as a fact that the meat was stolen, and in telling them to give full credence to the testimony of Johnson, and to the confession of defendant alleged to have been made to him. (Page 509.)

Appeal from Greene Circuit Court.

FELIX G. TAYLOR, Judge.

### STATEMENT BY THE COURT.

At the September term, 1895, of the Greene circuit court the appellant, William Sullivan, was indicted for grand larceny. At the spring term, 1899, the cause came on for trial. Appellant, waiving formal arraignment, entered his plea of not guilty, was tried, convicted and sentenced to one year in the penitentiary, and appealed to this court.

The evidence on which appellant was convicted, in part, is as follows:

B. A. Johnson, for the state: Was acquainted with the appellant in May, 1895. About that time witness had fourteen or fifteen dollars' worth of meat stolen from him. "Don't know of my own knowledge who took it. Other parties found the meat. I identified it by a wire that it was hung up by. This was in Greene county, Arkansas."

O. M. Batey, for the state: "Was a justice of the peace in Greene county in 1895. At that time two men named Allen were tried before me for the larceny of some meat. William Sullivan testified before me that time. I made no promise to

him to get him to make a statement. Sullivan testified that he and one of the Allen boys went to Col. Johnson's smoke house, and pried the hinges off the door, and went in, and carried off a certain amount of meat; took it off a piece; met the other Allen boy there with a sack to help them carry it off. He said they took three (3) middlings and four (4) hams. I committed William Sullivan to jail. This was sometime after. I made no promise of leniency to get him to testify. I was using him as a witness against the Allen boys. I did not bind him over for stealing the meat, but for stealing the clothes." The evidence of the witness as to Sullivan's testimony before him was objected to by appellant, and proper exceptions saved, and was excluded by the court, and the jury told not to consider it at all.

B. A. Johnson, for the defense: "I had a talk with Sullivan about stealing the meat before he went on the stand at Esquire Batey's. He came to my house not a great while after the meat was taken, and I got after him, for I suspected that he knew about the parties. I thought he was young, and I could get him to tell about it. He told me finally, after working with him for some time, that he would let me know the next day. He said that he thought the meat could be found. My recollection is that he went and had a conversation with his aunt, and he agreed to tell the story if we would agree to make it easy with him. I told him that I would make a state's witness of him to help convict the others. At the examining court it was my understanding that he was not to be bound over; that if we bound him over, the whole thing was gone. I think I told his aunt to go and see him, and we would try and make it as light on him as possible. It was our understanding that he would not be prosecuted if he would testify against the Allen boys. I was not holding any office in the county at that time, nor acting in any official capacity whatsoever. Sullivan confessed being with the Allen boys at the time they stole the meat. I simply told appellant that I would do all I could to make a state's witness of him against the Allen boys, if he would testify; that if he would tell all he knew about it, I would do what I could to make him a state's witness; that I would use my efforts to have that done." Defendant moved the court to exclude the

testimony of B. A. Johnson in regard to the confession made to him. Motion overruled, and exceptions saved.

*Crowley & Huddleston*, for appellant.

The court erred in the giving and refusal of instructions. It was also error to admit evidence of the confession of defend-́ ant, because same ·was not voluntary. 22 Ark. 336; 50 Ark. 305; 48 S. W. 904; 168 U. S. 575, 576. It was also error to admit the evidence of the magistrate before whom the prelimin- ary examination was had.

    *Jeff Davis*, Attorney General, and *Charles Jacobson*, for ap- pellee.

The withdrawal of the improper evidence cured the error of its admission. 60 Ark. 45; 43 Ark. 99; 56 Ark. 603; 60 Ark. 76; Elliott, App. Prac. § 702; 58 Ark. 482. Whether or not the confession was voluntary, it was within the province of the court to decide, upon all the facts of the case, and its ruling thereon is conclusive. 28 Ark. 121; 28 Ark. 531. There was no error in refusing to instruct the jury that it was for them to determine the admissibility of the confession. 28 Ark. *supra*. There was no error in the instruction given for the state. 43 Ark. 367.

HUGHES, J., (after stating the facts.) · After much other testimony had been given, the court instructed the jury "that the confession made by the defendant to Col. B. A. Johnson, together with the fact that the meat was stolen, will justify you in finding the defendant guilty." Defendant excepted.

The testimony of Col. B. A. Johnson as to the confessions of the defendant was not admissible. The proof shows that they were made by the defendant in the hope that, if he would confess, he would be made a state's witness against others, and that he would not be bound over or prosecuted "if he would testify against the Allen boys." This was promised him by Col. B. A. Johnson before he went on the stand as a witness. Col. Johnson, at the time he induced the defendant to make the confessions, was not in official position of any kind, but he was the owner of the stolen meat, the party injured, and really the prosecutor in the case, and as such was a person "in authority," within the meaning of the law.

In *Warickshall's Case*, 1 Leach's Cr. Cas. 299, Eyre, C. B., said: "A free and voluntary confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, and therefore it is admitted as proof of the crime to which it refers; but a confession forced from the mind by the flattery of hope or by the torture of fear comes in so questionable a shape, when it is to be considered as the evidence of guilt, that no credit ought to be given to it; and therefore it is rejected." "The material inquiry, therefore, is whether the confession has been obtained by the influence of hope or fear applied by a third person to the prisoner's mind." 1 Greenleaf, Ev. § 219. Lord Campbell stated the rule to be that "if there be any worldly advantage held out, or any harm threatened, the confession must be excluded." *Reg*. v. *Baldry*, 16 Jur. 599, 12 Eng. Law & Eq. 590. If the threat or inducement is held out, actually or constructively, by a person in authority, it cannot be received, however slight the threat or inducement; and the prosecutor, magistrate or constable is such a person. 1 Greenleaf, Ev. § 222; *Com*. v. *Sego*, 125 Mass. 210; *Knapp's Case*, 10 Pick. 489; *Charles* v. *State*, 11 Ark. 408; *Corley* v. *State*, 50 Ark. 305; *Reg*. v. *Moore*, 16 Jur. 622; 12 Eng. Law & Eq. 583.

It is true that, the principle of law that the confession must be voluntary being strictly adhered to, the question whether it is voluntary must be decided primarily by the presiding judge.

The instruction given by the court was clearly erroneous. It invaded the province of the jury in assuming as a fact that the meat was stolen, and in telling them to give full credence to the testimony of Johnson, and to the confession of the defendant alleged to have been made to him, which we have shown was inadmissible. It is error for the court in charging a jury to assume facts to have been proved, when they are disputed, or to charge the jury upon the weight of evidence. This is elementary. The constitution forbids it. For the errors indicated, let the judgment be reversed, and the cause remanded for a new trial.

BUNN, C. J., and BATTLE, J., did not participate.