### STATE vs. JAMES JACKSON.

*Criminal Law—Indictment for Burning Barn—Evidence—Confession—Inducement—Preliminary Hearing—Intent—How Proved—Malice—Defendant of Tender Age—Presumption of Law—Reasonable Doubt.*

1.  At the trial of defendant, who was indicted for burning a barn, it was proposed to prove what defendant said at his preliminary hearing before the Justice when the owner of the barn which was burned said to him, the best thing he could do was to tell the truth and he would get out of it better or get through with it better. *Held* inadmissible.

2.  From the mere fact that the defendant (being a person of tender years set the barn on fire, the jury may not conclude as a presumption of law, that it was done maliciously. But being over the age of seven years (in this case fourteen) the law presumes that he is capable, and in ascertaining whether the intent existed and whether the act was wilful and malicious, not only the act itself, but all the circumstances surrounding the case may be considered, including the intelligence of the defendant, his conduct before and after setting fire to brush near the barn, and everything relating to or connected with the transaction.

(*October 24, 1900.*)

LORE, C. J., and GRUBB, J., sitting.

*Robert C. White*, Attorney-General, for the State.

*Henry Ridgely, Jr.,* for the defendant.

Court of General Sessions, Kent County, October Term, 1900.

INDICTMENT FOR BURNING A BARN.

At the trial, George Krebs, a witness produced on behalf of the State, was asked by the Attorney-General if the accused made any statement at the preliminary hearing given him before the Justice of the Peace in Frederica, concerning the burning of the building and replied that he did. The witness was further asked whether any inducements were held out or threats made to the defendant before making such statements; to which the witness replied: "My father asked him why he burned the buildings down and he said he did not burn them down. My father told him the best thing he could do was to tell the truth and he would get out of it better, or get through it easier. My father owned the barn and he asked the Justice the privilege of asking Jackson a few questions."

*Mr. Ridgely* objected to the witness detailing anything that the prisoner may have said, on the ground that the above testimony showed a sufficient inducement.

*Stephens' Digest of Law and Evidence, 78—note 2.*

LORE, C. J.:—This was while the defendant was having a preliminary hearing on this particular charge when this was stated to him. The objection is sustained.

William Krebs, the father of the preceding witness, stated that the defendant worked for him on his farm where the barn was burned and was very disobedient and careless. On one occasion, a few days before the burning of the barn, he said to the boy, "Jim, why don't you try to do a little something?" The latter said: "I would not work to please you." The witness then called him a

"black whelp" and the defendant said, "I will cause you trouble for that."

Another witness testified that the defendant told him on the day of the fire in reply to a question as to how this thing happened —"I will tell you all about it Mr. Wilcuts. There was a pile of brush back of the barn and I went back there and set fire to it to burn it and it caught from the brush pile to the barn." The witness further stated that he asked the defendant if Mr. Krebs had told him to do that when he left and the defendant replied, "No sir, he did not." And being asked why he did it the defendant replied, "I saw it was there in the way and I thought I would get it out of the way." The witness further testified that he said to the ⸢defendant, "You see what you have done, don't you?" and the defendant replied, "Yes, sir; and I am sorry for it."

*Mr. Ridgely* requested the Court to instruct the jury that where a person of tender age (14 years old in this case) is accused of a crime the essence of which is the intent, such intent could not be inferred under the principle of law that every one is presumed to know the consequences of his own act.

LORE, C. J., charging the jury:

Gentlemen of the jury:—James Jackson, the prisoner at the bar, stands charged in this indictment with having, on the 19th day of May of the present year, in South Murderkill Hundred, in this county, feloniously, wilfully and maliciously burned a certain barn, the property of one William Krebs; and also that in that act he burned up certain property therein named.

It is incumbent on the State to make out the crime, that is that the barn was fired and burned maliciously and wilfully by the prisoner at the bar. In other words, that the barn, being the property of a person other than the prisoner, was set on fire and burned and that this boy was the cause of it.

It appears by the testimony on behalf of the prisoner, and is

not disputed by the State, that this boy was not quite fourteen years of age at the time of the burning but was within a few days of it. And we are asked to charge you that the mere fact that the boy, being of that tender age, having set fire to the barn does not necessarily from that fact alone carry with it a malicious intent, and that it is incumbent upon the State to show in connection with other facts, malice, a wilful and malicious intent to burn the barn.

It is true, as contended by the counsel for the defendant, that from the mere fact of setting the barn on fire by a person of tender years you may not conclusively or otherwise entertain the presumption of law that it was done maliciously. But we instruct you that, being over the age of seven years, under the common law, the law presumes that he is capable, and in ascertaining whether the intent existed and whether it was therefore wilful and malicious, you may not only take into consideration the act itself of setting the barn on fire but all the circumstances surrounding the case. You may consider the apparent intelligence of the boy who was on the stand, you may take into consideration his conduct before and after, and everything relating to or connected with that transaction; and if in your judgment, taking all of these facts into consideration, you believe the boy was capable of maliciously forming the intent of setting that barn on fire and burning it, that he had capacity which the law presumes, being over seven years of age, and that he wilfully and maliciously did it, even though you may not draw the conclusive inference from the mere setting of the barn on fire, yet if the facts and circumstances surrounding the case warrant you in the belief that he had the malicious and wilful intent, then it would be your duty to find him guilty in-manner and form as he stands indicted, otherwise not guilty.

You have all the facts relating to the case before you and it is for you to say, under the charge of the Court, whether he be guilty or not of the crime as charged in the indictment.

If there be a reasonable doubt in your minds that he had the malicious intent or such a doubt concerning any other material element in the crime charged, that should inure to acquittal.

If from the evidence you believe he did not set fire to the barn, but to the brush, you may consider that as well, whether setting fire to the brush alone, connected with all the other circumstances, carried with it the wilful and malicious intent to set fire to the barn and burn it.

Verdict, guilty, with a recommendation to the mercy of the Court.