[No. 2016]

# THE STATE OF NEVADA, RESPONDENT, *v.* WILLIAM DYE, APPELLANT.

1. CRIMINAL LAW—EVIDENCE—"VOLUNTARY CONFESSION."
   Where the defendant with two others was indicted for arson, and the complaining witness and the sheriff advised him to protect himself, that it would be better for him if he told the truth, the theory of the prosecution being that his codefendants were the principals who had instigated him to burn the prosecuting witness's store, and the prosecuting witness told him that he only wanted the principals, and others told him that his statements to a detective while in jail were sufficient to send him to prison, a confession elicited under such circumstances is not voluntary; for to be voluntary a confession must be made without hope or inducement of reward.

APPEAL from the Fourth Judicial District Court, Elko County; *Mark R. Averill*, Judge, presiding.

William Dye was convicted of arson, and he appeals. **Reversed and remanded.**

The facts sufficiently appear in the opinion.

*Patrick A. McCarran, Perky & Crow*, and *King & King*, for Appellant.

*Cleveland H. Baker*, Attorney-General, *James Dysart*, District Attorney, *F. S. Gedney*, and *Lewers & Henderson*, for Respondent.

By the Court, NORCROSS, J.:

Appellant was jointly indicted with Antone Primeaux and Roy Primeaux in the Fourth judicial district court, in and for Elko County, for the crime of arson. A severance of trials was obtained, and the appellant was tried prior to his codefendants, and convicted of arson in the second degree. From a judgment entered upon the verdict and from an order denying his motion for a new trial, defendant has appealed.

The trial of appellant lasted nearly forty days, and the record on appeal is embodied in four volumes aggregating about five thousand typewritten pages. Since the trial and appeal of the case against defendant Dye, the

trial of his codefendants has been had, and the latter acquitted. The indictment charged: "That the said defendants, Antone Primeaux, Roy Primeaux, and William Dye, on or about the 10th day of June, A. D. 1910, in the town of Tuscarora, county of Elko, State of Nevada, and before the finding of this indictment, without authority of law, did, feloniously, unlawfully, wilfully, and maliciously burn and cause to be burned, a certain building, then and there situated in the town of Tuscarora, county of Elko, State of Nevada, and then and there the property of A. W. Sewell and J. W. Linnell, copartners doing business under the firm name and style of A. W. Sewell & Co., which said building was then and there of the value of $2,000, and was known as and called the A. W. Sewell & Co. store, which said building was then and there occupied as a store by said corporation, and contained a stock of goods, wares, and merchandise of the value of $15,000, then and there the property of said A. W. Sewell and J. W. Linnell."

It was the theory of the state upon the trial of appellant that Dye and his codefendants had entered into a conspiracy to burn the store building of A. W. Sewell & Co.; the motive being that A. W. Sewell & Co. was a rival business competitor of the defendant Antone Primeaux. The record contains many assignments of error, but we think it necessary to consider only one.

It is contended by appellant that the court erred in admitting in evidence a confession made by defendant Dye implicating his codefendants. It is contended that this confession was inadmissible for the reason that it appeared, under the undisputed testimony, to have been given under promise and inducements of reward made by the sheriff, who had the defendant in charge, and by the prosecuting witness, A. W. Sewell, and by agents of the latter. We think the objection to the admissibility of this confession should have been sustained, and that its admission was prejudicial error. It clearly appears from the testimony that the complaining witness, A. W. Sewell, considered the appellant but a tool of the defendants

Primeaux, whom he regarded as the originators of the conspiracy, and they were the parties whose conviction he most desired. It is clear that this view of the situation was both directly and indirectly impressed upon the mind of the appellant. Prior to the confession a conversation was had between the sheriff and the defendant in the county jail, in which the sheriff said to appellant: "Bill, you watch out for Bill Dye." The sheriff also testified to the effect that he probably told appellant: "If you tell the truth, it will be a whole lot better for you." In a conversation between the appellant and the prosecuting witness, had in the county jail prior to the confession, the latter said to appellant: "Bill, you ain't to blame. It is others I blame. It is better for you to take care of yourself." The witness also testified that he probably told appellant that it would be better for him to tell what he knew of the case. At the time of the conversation with the complaining witness at which the confession was obtained, the complaining witness admits that he said: "Bill, I want the principals in this proposition. It wouldn't do me much good to send you to prison, for they could hire some one to do the job again. Bill, I want the head man in this." Besides these conversations had with the defendant by the sheriff and the complaining witness, it appears that a number of other parties in the employ of the complaining witness were seeking to obtain a confession from the appellant; that, among others, one Dewey, an employed detective, was placed in the jail with appellant, who also advised appellant in effect that it would be better for him to make a confession. Appellant was also told by counsel for the prosecution that statements which he had made to the detective Dewey while the latter was in jail with him were sufficient to send him to prison. During this time the appellant is shown to have been in poor health.

It is clear from all of the testimony and circumstances relative to this confession that the idea was thoroughly impressed on the mind of the appellant by agents of the prosecution that a confession implicating his codefendants Primeaux was what they wanted, and that if he

would make such a confession it would be better for him. That this was not a voluntary confession, made without hope or inducement of reward, offered by persons in authority, we think too clear for extended argument or consideration.

In *State* v. *Carrick*, 16 Nev. 129, this court speaking through Hawley, J., said: "The law excluding confessions is based in a spirit of charity for the weakness of human nature, and rests upon the theory that a man, when charged with crime, and threatened with the punishment of the law, or promised immunity therefrom, may be induced, while in an alarmed and excited condition of mind, to make statements that are not true. Such statements, when so made, are and should be excluded by the courts. * * * It is only in cases where the confession is obtained by mob violence, or by threats of harm, or promises of favor or worldly advantage held out by some person in authority, or standing in such intimate relation from which the law will presume that his promises or threats will be· likely to exercise such an influence over the mind of the accused as to induce him to state things that are not true, that will authorize the courts to exclude the confession or admission. The law in its general application to this question, as well as others, is founded in reason and common-sense. Its object is to ascertain the truth, and it is not its purpose to reject any reliable and competent means of attaining it."

The admission of the confession in evidence was strenuously opposed. Six days were devoted to this one question. Many facts and circumstances were detailed in the evidence, but the main facts referred to, *supra*, appear without substantial contradiction. In support of the rule that confessions secured in the way in which this one was, are inadmissible, we cite *People* v. *Barric*, 49 Cal. 342; *People* v. *Thompson*, 84 Cal. 598, 24 Pac. 384; *People* v. *Castro*, 125 Cal. 521, 58 Pac. 133; *State* v. *Jackson*, 3 Penniwell (Del.) 15, 50 Atl. 270; *Dixon* v. *State*, 113 Ga. 1039, 39 S. E. 846; *Mitchell* v. *State* (Miss.) 24 South. 312; *Commonwealth* v. *Myers*, 160 Mass. 530, 36 N. E. 481;

*Commonwealth* v. *Curtis*, 97 Mass. 574; *State* v. *York*, 37 N. H. 175; *People* v. *Kurtz*, 42 Hun (N. Y.)'335; *State* v. *Wintzingerode*, 9 Or. 153; *Searcy* v. *State*, 28 Tex. App. 513, 13 S. W. 782, 19 Am. St. Rep. 851; *Newman* v. *State*, 49 Ala. 9; *Territory* v. *Underwood*, 8 Mont. 131, 19 Pac. 398; *State* v. *Jay*, 116 Iowa, 264, 89 N. W. 1070; *Sullivan* v. *State*, 66 Ark. 506, 51 S. W. 828, 12 Cyc. 461.

Judgment reversed, and cause remanded for a new trial.

TALBOT, C. J.: I concur.

MCCARRAN, J., having been attorney for the defendant in the case when it was tried in the lower court, did not participate in the opinion.