SHAWN BATISTA BRUST, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 21869

October 22, 1992                                           839 P.2d 1300

[Rehearing denied February 1, 1993]

*Easterly & Armstrong,* Elko, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Marshall Smith,* District Attorney, *Cheryl Day Schorr,* Deputy District Attorney, Elko County, for Respondent.

---

## OPINION

*Per Curiam:*

On October 11, 1990, the appellant, Shawn Batista Brust ("Brust"), was convicted of two counts of sexual assault on a child under the age of fourteen and one count of lewdness with a child under the age of fourteen. All of these incidents involved Brust's niece, who was five years old when the incidents occurred. Brust was sentenced to life imprisonment on each of the sexual assault counts and to three years in prison on the lewdness count; the sentences are running concurrently.

At Brust's trial, the jury was allowed to hear several arguably incriminating statements made by Brust when he was interviewed by the police at the Elko County Jail.[1] In addition, the complaining witness, Brust's niece, testified. Dr. Joann Lippert, a child psychologist who had interviewed the child at the State's request, also testified. The jury was then allowed to view part of a previously videotaped interview between the child and Dr. Lippert to "demonstrate the techniques of [Dr. Lippert] in interviewing a small child."[2]

On appeal, Brust contends that his statements to the police were not voluntary but were coerced because the police impliedly

---

[1]Brust had previously filed a motion to suppress this "confession"; the district court, however, denied the motion.

[2]On July 23 and 24, 1990, Dr. Joann Lippert conducted two interviews of the child; Dr. Lippert videotaped both interviews.

promised leniency. We disagree. We have held that "[a] confession is admissible only if it is made freely and voluntarily, without compulsion or inducement." Passama v. State, 103 Nev. 212, 213, 735 P.2d 321, 322 (1987) (citing Franklin v. State, 96 Nev. 417, 421, 610 P.2d 732, 734-35 (1980)). Specifically, a confession is involuntary if it was coerced by physical intimidation or psychological pressure. Passama at 214, 735 P.2d at 322-23. We conclude that Brust's testimony was made voluntarily and that it was not coerced.

In Passama, 103 Nev. at 226, 735 P.2d at 323, we enunciated a "totality of the circumstances" test to be used in determining whether a confession is voluntary:

> To determine the voluntariness of a confession, the court must consider the effect of the totality of the circumstances on the will of the defendant. The question in each case is whether the defendant's will was overborne when he confessed. Factors to be considered include: the youth of the accused; his lack of education or his low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated or prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep.

(Citations omitted.) We also noted in Passama that promises made to the defendant are critical in determining whether the confession was voluntary: "If these promises, implicit and explicit, tricked [the defendant] into confessing, [the] confession was involuntary." Id. at 215, 735 P.2d at 323.[3] Subsequently, in Rowbottom v. State, 105 Nev. 472, 482, 779 P.2d 934, 941 (1989), we noted that "each [confession] situation should be evaluated according to its particular facts and circumstances." In the present case, the district court applied Passama to the specific facts involved and determined that Brust's statement was voluntary considering the totality of the circumstances.

On appeal, if substantial evidence supports the district court's finding that the confession was voluntary, then the district court did not err in admitting the confession. Rowbottom, 105 Nev. at 483, 779 P.2d at 941. Substantial evidence has been defined as "evidence that 'a reasonable mind might accept as adequate to

---

[3]In Passama, the officer used a "carrot and stick" approach and continually urged the defendant to talk. The officer stated that if the defendant was lying, the officer would see that he went to prison. In addition, the officer expressly stated that if the defendant told the truth, the officer would help. Id. We determined that Passama's confession was coerced, and therefore involuntary; thus, Passama's due process rights were violated when the confession was admitted at trial. Id. at 216, 735 P.2d at 324.

support a conclusion.' " First Interstate Bank of Nevada v. Jaf-bros Auto Body Inc., 106 Nev. 54, 56, 787 P.2d 765, 767 (1990) (citation omitted).

We conclude that the district court's decision to admit Brust's statements is supported by substantial evidence. Although Detective Ladd did make suggestive statements regarding leniency and did tell Brust that Brust needed help, Detective Ladd repeatedly stated that he could make no promises and told Brust that his job was to gather evidence against Brust.[4] In addition, Detective Ladd read Brust his Miranda Rights, Brust waived these rights, and Brust was not interviewed for a particularly long time. At the onset of the interview, Detective Ladd reiterated that Brust did not have to talk if he did not want to talk. Finally, Brust was not physically intimidated or abused during the interview process.

In Laursen v. State, 97 Nev. 568, 570, 634 P.2d 1230, 1231 (1981), we summarized the process of admitting a possibly coerced statement as follows:

> Nevada follows the Massachusetts rule when the voluntariness of a defendant's statement is put in issue. Under this rule, the trial judge receives evidence on the voluntariness of the statement and determines whether the statement was voluntary. If so, it is admitted. However, the court must later submit the issue by appropriate instruction to the jury.

In the present case, the district judge determined that Brust's statements were voluntary and properly instructed the jury on the voluntariness of statements. We conclude that the district judge did not err in determining that Brust's statements were voluntary and that the district court properly admitted them.

---

[4]Brust argues that incriminating statements induced by promises of leniency should be suppressed. He relies on cases from several jurisdictions holding that express promises of leniency result in involuntary confessions as a matter of law. *See* People v. Koesterer, 358 N.E.2d 295 (Ill.App. 1976); State v. Tardiff, 374 A.2d 598 (Me. 1977); State v. Ely, 390 P.2d 348, 350 (Or. 1964). Brust also relies on State v. Dye, 36 Nev. 143 (1913). In *Dye,* the defendant was told by the complaining witness that the complaining witness wanted only the "head man" and did not want Dye to go to prison. The complaining witness also stated, "Bill, you ain't to blame. It is others I blame." *Id.* at 145. Thus, in *Dye,* the complaining witness directly represented to Dye that Dye would not be punished. Although some of the statements made to Dye were similar to statements made to Brust in the present case, we conclude that the cases are factually distinguishable as no representations were made to Brust that he would not be prosecuted. In fact, the opposite is true; Detective Ladd told Brust that his job was to gather evidence against Brust and to "lock him up" and that the child-victim (the complaining witness) would be testifying against him.

Brust also argues that the district court erred when it allowed the jury to view the videotaped interview between the child and Dr. Lippert, the State's psychologist. Even though the videotape may have effectively shown the jury how the psychologist interviews small children, the videotape was still hearsay, as it contained the child's out-of-court statements describing the sexual assaults. *See* NRS 51.035. Brust maintains that his right to confront and cross-examine the child was disregarded when the jury was allowed to view the videotape. In addition, he correctly contends that, at the very least, the court should have conducted a hearing as required under NRS 51.385.

NRS 51.385(1) is an exception to the hearsay rule; it allows a child's out-of-court statement describing sexual conduct to be admitted. Specifically, NRS 51.385(1) states the following:

> In addition to any other provision for admissibility made by statute or rule of court, a statement made by a child under the age of 10 years describing any act of sexual conduct performed with or on the child is admissible in a criminal proceeding regarding that sexual conduct if the:
> (a) Court finds, in a hearing out of the presence of the jury, that the time, content and circumstances of the statement provide sufficient circumstantial guarantees of trustworthiness; and
> (b) Child either testifies at the proceeding or is unavailable or unable to testify.

Thus, to admit hearsay evidence under NRS 51.385, the court must, in a separate hearing, find the hearsay statement trustworthy. In addition, the child must either testify or be unable to testify at trial.

In our recent case of Lytle v. State, 107 Nev. 589, 816 P.2d 1082 (1991), we examined the requirements of NRS 51.385(1). In *Lytle,* numerous hearsay statements made by the child-victim to her mother and government agents were admitted at trial without the requisite "trustworthiness" hearing. We concluded that "NRS 51.385 clearly requires a hearing for the purpose of determining the trustworthiness of the offered hearsay statements prior to the statements being brought before the jury." *Id.* at 591, 816 P.2d at 1083. Thus, in the present case, the district court erred, as it did not, in a separate hearing, find the child's video taped statements trustworthy.

In this case, however, the hearsay testimony and the circumstances under which it was introduced were quite different from

the testimony and circumstances in *Lytle*. Here, the hearsay evidence consisted of the child's own taped statements to a clinical psychologist in an interview situation. Prior to the introduction of the hearsay evidence, the child-victim had already taken the stand and had testified about the sexual assaults. The child was fully cross-examined by defense counsel. In addition, Dr. Lippert had testified about the circumstances of her interview with the child before the tape was introduced. Specifically, Dr. Lippert explained that the child had spontaneously brought up the specific incidents of "bad touching" in the taped interview.

In opposing the admission of the videotape, defense counsel stated, "I have watched it, and it's basically a tape of [the child] telling her story again . . . to Dr. Lippert. It's repetitive of her own testimony, of the doctor's testimony. . . . So I would argue that this would just be repetitive. It's hearsay and inadmissible." Thus, the district court was informed, by defense counsel, that the child's statements on the tape were the same as her statements during trial. Because the child's own statements appeared on the videotape, and because the district court had already listened to her trial testimony, listened to Dr. Lippert's testimony, knew the circumstances of the child's interview with Dr. Lippert, and was told by defense counsel that the tape was repetitive of the child's trial testimony, the court knew what to expect from the videotaped interview. The district court certainly should have held a separate hearing to determine that the "time, content and circumstances of the [videotaped] statement provided sufficient circumstantial guarantees of trustworthiness"; however, we conclude that the lack of a separate "trustworthiness" hearing was harmless error under these particular circumstances.

Brust's right to cross-examine the child-victim is a substantial right; and although Brust did not have the opportunity to cross-examine her during the videotaped interview, the child was present as a witness and was cross-examined during the trial. As the child's testimony during the trial was the same as that recorded on the videotape, Brust's right to confront and cross-examine the child was not affected by any error. As we held in Maginnis v. State, 93 Nev. 173, 176, 561 P.2d 922, 923 (1977), " 'the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross examination.' " (Citation omitted.) Accordingly, we affirm in all respects the judgment of conviction.